THE TOWN OF HARMONY, Appellant, *vs.* JOHN A. CLARK, Appellee.

*Opinion filed April 19, 1911.*

1. HIGHWAYS—*fences determine width of highway not laid out under the statute.* Where a road is not originally laid out, under the statute, by the commissioners of highways, its width is to be determined by the fences built by owners on each side of the road, whether the road is claimed to exist by dedication or prescription.

2. SAME—*whether owner dedicated strip between hedge fence and rail fence is a question of fact.* Where a land owner plants a hedge several feet inside of a rail fence which separates his land from a road and subsequently removes the rail fence, the question whether he dedicated the strip between the hedge and the rail fence as a part of the road is a question of fact to be determined from all the facts and circumstances in the case, including the fact that hedge trimmings were allowed to accumulate thereon.

3. EVIDENCE—*when alleged error in not admitting evidence is harmless.* Alleged error in refusing to admit in evidence in a road obstruction case a certain order and a copy of a petition offered on the question of the width of the road is harmless where they could have no material influence on the result of the trial, the road not being one laid out under the statute, and the issue being whether a land owner, by removing the original rail fence after his hedge had grown, dedicated the strip between the fence and the hedge or suffered the public to acquire a prescriptive right therein.

APPEAL from the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding.

SCOFIELD & CALIFF, (DAVID E. MACK, of counsel,) for appellant.

O'HARRA, O'HARRA, WOOD & WALKER, and HARTZELL & McCRORY, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant brought an action of debt in the circuit court of Hancock county upon the statute, against appellee, to recover the penalty provided for the obstruction of a public highway. The declaration averred that notice had been given appellee to remove the obstruction and a recovery was sought for continuing the obstruction after giving the notice. Issue was joined and the cause tried by a jury, resulting in a verdict and judgment in favor of the appellee. Appellant prosecutes this appeal to reverse that judgment.

The highway appellee is charged with obstructing runs east and west through the middle of sections 31, 32, 33, 34, 35 and 36, in the town of Harmony, Hancock county. It was never laid out by proceedings had under the statute and exists as a public highway only by prescription or dedication. There is no dispute between the parties as to there being a highway at the place in question and that it had existed for more than forty years. In 1861 Thomas G. Lyons became the owner of and removed upon the east half of the north-west quarter of section 35. The place of the alleged obstruction is the north side of the road at the south end of this eighty. Before Lyons became the owner of said eighty there was a road running through the middle of the sections before mentioned, fenced at the place in question on both sides with rail fences. In 1865 Lyons planted a hedge fence across the south end of his eighty and on the north side of the rail fence that separated his land from the road. He testified he planted his hedge as close to the rail fence as he could and have room enough between it and the rail fence to cultivate his hedge on the

south side with one horse and a plow. The rail fence did not run in a straight line, and the hedge was planted in a line that was not entirely straight but to some extent followed the course of the rail fence, the distance between the hedge and the rail fence being greatest at the east side of Lyons' eighty. The rail fence was allowed to stand until the hedge made sufficient growth to answer the purpose of a fence. From time to time, as the hedge grew, parts of the rail fence were removed, the last of it being removed about 1875. The proof shows very little work was done on the road by the road authorities. A ditch about the depth of a plow furrow was made on the north side of the traveled track, and one witness testified that by direction of the road authorities he mowed the grass and weeds along the side of the road up to the hedge fence, at one time. The traveled track of the road was somewhere near the middle of the space left between the original fences. In muddy times the road was a bad one, and people in traveling over it in vehicles would sometimes travel out of the traveled track on the north side of the ditch for a distance of about sixty rods of the east part of the road. Sixty rods west of the east line of the Lyons eighty the ditch washed so deep that it could not be crossed, and over that part of the road travel had to be on the south side of the ditch. Between the ditch and the hedge fence at that place brush and saplings grew up. Lyons sold the eighty-acre tract described about 1890 to his son, and some two years later his son sold it to appellee, who still owns it. In trimming the hedge fence the owner of the land would drop the brush on the south side of it and it accumulated there until five or six years before bringing this suit, when appellee, wishing to destroy the hedge, burned the brush and the hedge and built a wire fence south of the line of the old hedge fence. It is this wire fence that is alleged to be an obstruction in the highway.

The proof shows that at the east side of the appellee's eighty the wire fence is about eight feet south of the stumps of the hedge fence and at the west side of the eighty about four feet south of the stumps of the hedge. As the hedge was crooked between those points, at some places the distance between the hedge and the wire was less than three feet. The appellant contends that the road as it existed by prescription or dedication was sixty-six feet wide and thirty-three feet of it came off the south end of appellee's eighty acres. Measurements from stones supposed to mark the east and west half-section line through the sections mentioned, according to the proof of appellant, show that at the east and west sides of appellee's land the distance between his wire fence and the stones is twenty-nine feet and at one place between those points twenty-seven feet. By building his fence closer than thirty-three feet of the line of these stones appellant contends appellee obstructed the public highway.

As the road was not originally laid out under the statute by the commissioners of highways, its width would be determined by the fences built by the owners on each side of it, whether it existed by prescription or dedication. For the purpose of showing that the road was intended to be sixty-six feet wide, appellant offered in evidence an order spread upon the town clerk's records, made by the commissioners of highways in 1858. The order recited that a road on the east and west center line of sections 31, 32, 33, 34, 35 and 36 was then used as a public highway and had been so used for twenty years but it had never been recorded. It was therefore ordered that the road be ascertained, described and entered of record according to a survey which had been made under the direction of the commissioners, and the road was described as four rods wide. The court sustained appellee's objection to the offer of this evidence. Appellant also, after proving the loss of the original petition, offered in evidence a copy of a petition presented

to the commissioners of highways of Harmony township, dated February 12, 1908, signed by appellee and others, requesting that the width of the road through the sections mentioned, for a distance of four miles, be reduced from sixty-six feet to sixty feet. Objection by appellee to the introduction of this document was sustained and it was not permitted to be introduced in evidence. Aside from the rulings of the court in refusing to admit this proof and giving and refusing certain instructions the controversy here is wholly one of fact. The real question is, did appellee place his fence on land that had been dedicated to and accepted by the public as a highway, or on land that the public had acquired a highway over by prescription? In our opinion the rail fence on the north side of the road marked the boundary of the highway, and unless, when the rail fence was removed, the owner of the land dedicated the strip between it and the hedge fence or the public acquired a right to that strip by prescription and travel over it, the road never did extend to the hedge fence. Whether there was such dedication, or the right to the land was acquired by prescription, were questions for determination by the jury under all the facts and circumstances proven. It may be that under the facts these were debatable questions, but it cannot be said that under the evidence the jury were bound to find for appellant under both or either of said questions.

Lyons, who owned the land until 1890, set out the hedge fence in 1865. It is true, he testified he intended it for a permanent fence, but he also testified that he set it as close to the rail fence as he could and leave room to plow between the rail fence and the hedge with one horse. The proof further shows that in trimming the hedge the brush was dropped on the south side of it, and this practice was continued and the brush accumulated from time to time until shortly before the appellee built the wire fence, when he burned it for the purpose of destroying the hedge.

Three or four years before appellee built the wire fence a line of telephone poles was set along the south side of the hedge fence, and according to the proof the poles were set as close to the hedge as the brush piled on the south side would admit. The wire fence alleged to be an obstruction in the road is on the north side of this line of telephone poles. The evidence is not clear as to the exact location of the wire fence with reference to the old line of the rail fence, but from the descriptions given of the rail and hedge fences and the distance left between them, and the distance between the wire fence and the stumps of the hedge fence, which are still standing and show clearly its line, we think the conclusion is amply warranted that the wire fence is substantially on the line of the old rail fence. As we have said, the distance between the wire fence and the hedge is not uniform, because of the fact that the hedge fence was not built in a straight line. The greatest distance between the wire fence and the hedge is at the east line of appellee's eighty and is about eight feet. One witness testified on behalf of appellee that he measured the distance between every post in the wire fence and the hedge stumps throughout the entire eighty rods. He testified several posts were less than three feet from the hedge, and in this he was not contradicted by anybody who made measurements.

In our opinion the order of the commissioners of highways of 1858, and the copy of the petition of the commissioners of 1908 to reduce the width of the road, could have had no material influence on the result of the trial if they had been admitted in evidence, and the refusal of the court to admit them in evidence affords no ground for a reversal of the judgment, even if it be conceded that they were competent. Neither do we think there was any error in the giving or refusing of instructions.

In our opinion the verdict and judgment were warranted by the evidence, and the judgment is affirmed.

*Judgment affirmed.*