## Town of Ellison, County of Warren, State of Illinois, Appellee, v. Thomas H. Brent, Appellant.

### Gen. No. 7,156.

1. HIGHWAYS AND STREETS—*extent of width of highway by prescription.* The entire width of a strip of land within the limits of its original inclosure between· hedges and fences is shown to be a public highway by prescription by evidence that it has been so inclosed and used for more than fifty-six years and has been worked and graded by the highway officials and that the hedges and fences have been replaced from time to time in their original locations by the abutting owners, and it is immaterial that only a portion of the width has been graded by the highway officers or used by the public as a roadway or that the hedges overgrew the sides of the strip and made them impassable to travel or that weeds and brush grew up therein after the hedges were removed; and an abutting owner who builds a fence in any portion of such strip is guilty of unlawfully obstructing the public highway.

2. HIGHWAYS AND STREETS—*failure to trim hedges as justification for obstructing highway.* An abutting owner who has failed to trim his hedges along public highways in compliance with the requirements of the statute of 1883, Cahill's Ill. St. ch. 54, ¶ 22, that all hedges shall be cut back to five feet in height after they ,reach the age of seven years and providing a penalty for failure so to do, cannot predicate a claim of ownership to that portion of a highway overgrown by such untrimmed hedges or justify an obstruction of such portion of the highway thereby.

3. HIGHWAYS AND STREETS—*violation of Road Act by encroachment not dependent upon materiality of obstruction.* In a proceeding under the Road and Bridge Act to recover a penalty from an abutting owner for obstructing a public highway, an instruction which, in effect, tells the jury that it is no defense that the obstruction does not materially affect the use of the highway by the public or that the part encroached upon is not ordinarily traveled or used by the public, is not objectionable as not restricting recovery of a penalty to the encroachment described in the declaration and the notice.

4. APPEAL AND ERROR—*necessity for pointing out alleged error.* Alleged error of the trial court in refusing to give instructions requested by defendant will not be considered by the Appellate Court on appeal where the instructions in question are not considered in detail and the reasons why the instructions should have been given are not pointed out by appellant.

Town of Ellison v. Brent, 228 Ill. App. 438.

Appeal by defendant from the Circuit Court of Warren county; the Hon. WALTER C. FRANK, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed March 16, 1923.

L. H. HANNA, for appellant.

J. W. CLENDENIN and CHARLES E. LAUDER, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, the Town of Ellison, Warren county, Illinois, began suit in the circuit court of Warren county against the appellant, Thomas H. Brent, to recover a penalty under the Road and Bridge Act, for obstructing a public highway by building a fence therein. There was a trial by a jury, the appellant was found guilty and a penalty of $3 and costs was assessed against him, and from that judgment this appeal was prosecuted.

The evidence shows that in 1918, appellant became the owner of the north half of the southwest quarter of section 18, township 9 north, range 3 west, in Warren county, Illinois. The land had no improvements except the fences, and was about a mile and a half from the home of the owner. For more than fifty-six years there had been a road, extending north and south, along the east side of this eighty acres. The boundaries of this road were fixed on each side by fences. The land was substantially level but was a little higher at the north end than at the south. This road was slightly more than four rods in width. On the west side of the road, being the east side of the eighty acres, since 1866, there had been a hedge fence forty or fifty rods long at the south end of the eighty, and an old rail fence at the north end about thirty or forty rods long. The hedge fence at the south end was cut about 1911 and barb wires were nailed to the old

hedge posts which were left standing, and these hedge posts and the barb wire nailed to them continued to mark the west boundary of the highway. Sometime in the seventies, the rail fence through the north part of the eighty was replaced by a post and wire fence, which was later replaced by another post and wire fence, and this last fence remained in this position until the spring of 1920, when the fence complained of was erected by the appellant. There was a slight mound in a straight line south from the north line of the land, and there was a line of scattered depressions at regular intervals from that point running in the same direction, both of which were west of the post and wire fence. In the early history of this eighty acres of land it was owned by a family by the name of Brown, who had a residence thereon, with a large orchard near the building, all of which were within a few rods of the public road. There was an entrance to the land through a gate near the north end of the rail fence. In 1874, this land was sold to a family by the name of Brent, and it remained in that family until 1918, when it became the property of appellant. There was a hedge fence on the east side of the road opposite the appellant's hedge, and there was also a wire fence on that side of the road for a part of the distance through this eighty. This hedge fence on the east side of the road had been pulled before the time of the trial and a wire fence had been put in its place. In the center of the section these old hedge fences on either side of the road were sixty-three feet apart, and at the eighty-rod line to the south the fences were seventy-three and one-half feet apart. For a great many years the hedges on both sides of this road were not kept trimmed to the height provided by law, but the limbs grew close to the ground and they extended out for a distance of eight or ten feet from the hedge, thus obstructing that much of the road. The hedge on the west side of the road in

later years was trimmed from time to time and the branches were permitted to remain in the highway. Wild crab apple trees, bushes, weeds and other vegetation grew up through these hedge branches along the west side of the road and remained for a considerable time almost completely obstructing this part of the road. The defendant grubbed out some of these crab apple trees on the east side of the hedge in the highway, cut down brush and weeds, and cleared the road so that he was able to cut two rounds with a five-foot mower on the land lying between the old fence and a water ditch at the west side of the traveled part of the highway. In 1920, appellant built a new wire fence east of the old fence. The new fence at the south end was about seven feet east of the old hedge posts. As it extended north, the line of the new fence came closer to the old hedge, so that at the north line of the eighty acres the new fence was three and a half feet east of the old fence. The travel in the highway was on a strip thirty feet wide near the center and was the only part of the highway ever graded by the highway officials. The space between the water ditch on either side of the graded strip and the fences was never worked by the highway officials, but portions of this space were used for travel by the public when the center of the road was muddy.

The question for determination is whether or not the land between the old fence and the new fence erected by appellant was a part of the public highway, and whether the fence built by appellant was an obstruction to the highway within the meaning of the statute.

Highways may be established in this State in three ways, by prescription, by dedication and by statute. It is conceded that this highway was not created by statute, so that method need not be considered. The length of time necessary to create a highway by prescription has varied under different statutes. The

statute of 1872 required ten years' user, the statute of 1883 required twenty years' user, and the statute of 1887, being section 152 of the Road and Bridge Act [Cahill's Ill. St. ch. 121, ¶ 153], provides that "all roads in this State which have been laid out in pursuance of any law of this state, or of the territory of Illinois, or which have been established by dedication, or user by the public as highways for fifteen years, and which have not been vacated in pursuance of law, are hereby declared to be public highways."

In order to establish a highway by prescription, there need be no claim of right in words, nor a declaration that the use is adverse, nor an admission by the landowner that he had knowledge of the adverse claim of right. Where the line of travel over an alleged highway has been substantially the same for the statutory period, during which time the use by the public has been continuous and uninterrupted, the owner of the land over which the highway extends will be held to have knowledge of the right of the public and adjoining landowners to use the land as a public highway. *Thorworth v. Scheets,* 269 Ill. 573. A highway which has been open as a public highway to all the public and has been known and used as such in common for the statutory period is a public highway. The test is not as to the number of persons actually using the highway, but the test is the right of the public to use it. The fact that the road is recognized by the township authorities as a public highway, and is worked the same as other roads, strongly indicates that it is a public highway. *Phillips v. Leininger,* 280 Ill. 132. Where a public highway was not originally laid out under the statute, its width is to be determined by the fences built by the owners on either side, whether the road exists by prescription or by dedication. *Town of Harmony v. Clark,* 250 Ill. 57; *Village of Middletown v. Glenn,* 278 Ill. 149. To constitute a common-law dedication there must be an intention on

the part of the landowner to dedicate and an acceptance by the public, but, so far as the landowner is concerned, dedication is complete whenever the dedication appears, either by declaration or by conduct. The law will imply an intention to dedicate land to the public use by any acts of the owner indicating the intention to so dedicate. Where his conduct has been such as to lead an ordinary thoughtful person to infer an intention to make a dedication, and there is an acceptance of the same and the land is used as a highway, the dedication is complete and cannot be recalled by the owner. *Phillips v. Leininger, supra.* By building fences the owners of adjoining property may dedicate the land inclosed between the fences as a public highway. *Highway Com'rs Cold Springs Tp. v. Bruner,* 163 Ill. App. 657. It is of the essence of a dedication that there should be the intention to make it, and the evidence must be clear, either showing such actual intention, or showing acts and declarations such as will equitably estop the owner from denying such intention. The fencing out of a strip of land by the owner affords strong evidence of its being left for a street, and, without evidence to the contrary, may be accepted as proof of dedication. *City of Chicago v. Hill,* 124 Ill. 646; *Moffett v. South Park Com'rs,* 138 Ill. 620. The law implies an intent to dedicate a public highway from any act of the owner indicating an intention to dedicate, and if the dedication is accepted by the public, the dedication is complete. *Seidschlag v. Town of Antioch,* 207 Ill. 280. The fencing of strips of land by the owner, leaving them in the direct line of other streets, or roads, affords strong evidence of their being left for street purposes, and in the absence of evidence to the contrary may be accepted as proof of dedication. *Wiehe v. Pein,* 281 Ill. 130.

Applying these rules of law to the facts in this case, it appears that for over fifty-six years the highway in question had been used by the public and had fences

on each side. These fences marked the boundary lines of this highway, and while it is true that only a path thirty feet wide in the center was used by the public, yet such highway, in fact, extended from one fence to the other. It continued in this condition until the land was purchased by the appellant in 1918. For several years, the hedge on each side of the road extended out many feet into the public highway, and, for this reason, the appellant claims that part of the road could not be used by the public, and for that reason the highway only consisted of the part which was used by the traveling public. In 1883, a statute was passed, chapter 54, sec. 22 [Cahill's Ill. St. ch. 54, ¶ 22], requiring the owners of hedge fences along public highways, after the hedges reach the age of seven years, to cut them back to a height of five feet, and a penalty is provided for the failure so to do. This hedge fence was in existence from 1866 until it was finally replaced by the wire fence in 1911. From 1883 to 1911 it was the duty of the owners of this land to trim this hedge as provided by statute, and because of the fact that the owners did not comply with the statute, they will not now be heard to claim that they own the strip thus obstructed. After the hedge was replaced by a wire fence there was a growth of bushes, weeds and grass between the beaten path of the public highway and the west fence, but this did not prevent that part on which these bushes grew from being a part of the public highway. We think the evidence clearly shows that this was a highway by prescription, and that it extended from fence to fence, as those fences originally existed before they were replaced by the owners of land on each side of the highway. It is not necessary to determine whether this was a highway by dedication, but even if it was not a highway by prescription, under the authorities cited, it had many of the requisites of a highway by dedication, and many of the requisites of dedication apply to a highway by prescrip-

tion. We think the evidence clearly shows that the plaintiff in error obstructed a part of this highway as charged against him, and that the penalty assessed against him was justified by the evidence.

Complaint is made of the seventh, eighth, tenth, eleventh, twelfth, thirteenth and sixteenth instructions on behalf of the appellee. The objection to the seventh instruction is that it assumes that an obstruction existed in the highway, assumes that a public highway existed and that the obstruction was placed in the highway. This instruction in effect tells the jury that it is immaterial that the fence on the opposite side of the road had been changed in its location, and we do not think it makes the assumptions charged against it. The objection to the eighth instruction is that it assumes that the road in question was a public highway, does not define a highway by prescription, and none of the other instructions remove the error by defining a highway by prescription. This instruction tells the jury that any interruption in the public travel must be an interruption of the right of the public, and not simply an interruption of the use or possession thereof. It does not attempt to define a highway by prescription and does not assume that the road in question was a highway. The objection to the tenth instruction is the same as the objection to the eighth, with the additional objection that it does not include the strip of land in controversy on which the fence was located. We do not think this instruction is capable of this interpretation. It correctly states the law on the matter called to the attention of the jury and is not subject to the objections made against it. The objection to the eleventh instruction is that it tells the jury that the road in question had never been vacated, and it misled the jury by suggesting that if some part of certain land became a highway by user, without defining the character of the user, that the land in question on which the fence is located was a part thereof

without regard to whether it had ever been used by the public. We think the instruction correctly states the law, and there is no evidence in this record that the road ever was vacated as provided by statute. The objection to the twelfth instruction is that it told the jury that any encroachment was a violation of law as applied to the case, whereas, in fact, a penalty could not be recovered unless the encroachment described in the declaration and in the notice had been shown to exist in the highway. This instruction in effect tells the jury that it is no defense that an encroachment on a public highway does not materially effect the use of the highway by the public, or that the part encroached upon is not ordinarily traveled or used for the public. It also correctly states the law and is not subject to the objections made against it. The objection to the thirteenth instruction is that it does not correctly state the law of 1872, which made the prescriptive period only ten years, and that it does not define the character of the user upon which a prescriptive right may be based. As a matter of fact this instruction is more favorable to the appellant than it would have been if the statute of 1872 had been referred to, and we do not think appellant had any cause to complain. The instruction clearly sets forth the law with reference to a highway by user as applied in this case. The objection to the sixteenth instruction is that it too freely refers to the public highway in question and whether it has been proved that the place where the fence was erected was at the time a public highway without telling the jury that such facts must be proved by a preponderance of the evidence. We do not think this instruction is subject to the objections made against it.

Complaint is also made of the fifth, seventh, eighth, ninth, tenth, eleventh, twelfth, twenty-fifth, twenty-sixth, twenty-seventh and twenty-eighth instructions refused on behalf of the appellant. Only two of these

instructions are considered in detail. It is not our duty to search for reasons why they should have been given. That duty rests on plaintiff in error, and if he does not see fit to point out his reasons why the instructions should have been given, we will consider his objections as waived. We have carefully examined all of the instructions given and refused and we think those given on behalf of both parties fully covered the law applicable to the facts of the case. Several of the instructions refused were quite lengthy and were more calculated to mislead the jury than they were to tell them what the law was applicable to the facts. We do not think there was any error committed in either the instructions given or refused.

Complaint is made of certain remarks made by counsel for the appellee in the argument to the jury. The court sustains the objections to these remarks and they are not preserved in the bill of exceptions, but are set out in two affidavits which were not included in the bill of exceptions. For this reason they are not properly before us and will not be considered. *Kelly v. Chicago, R. I. & Pac. Ry. Co.,* 175 Ill. App. 196; *Peyton v. Village of Morgan Park,* 172 Ill. 102.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*