(No. 17624.—Reversed and remanded.)
THE VILLAGE OF WINNETKA, Appellee, *vs.* IDA M. LYONS
*et al.*—(WILLIAM W. CASE *et al.* Appellants.)

*Opinion filed October 28, 1926—Rehearing denied Dec. 14, 1926.*

1. PLATS—*mere intention to dedicate is not sufficient.* A dedication of private property to public use will not be held to be established except upon satisfactory proof either of an actual dedication or of such acts or declarations as equitably estop the owner from denying such intention, and the fact that the owner has a survey and a plat made for his own information and with a possible view to making a dedication is not sufficient to constitute a dedication in the absence of evidence of some act, beyond mere preparation, in carrying the intention into effect.

2. HIGHWAYS—*boundary of highway acquired by user is question of fact.* User by the public of a strip of land as a highway for a period of fifteen years constitutes the same a public highway, but the location of the boundaries of such highway is a question of fact, to be determined by evidence bearing upon that question, the width and location often being determined by fences built by adjoining land owners.

3. SAME—*prescriptive right acquired by user is limited to strip actually used.* A prescriptive right acquired by user must be confined to a specific or definite, certain and precise, line or way, as travel of the public over vacant property without the knowledge of the owner can give no right outside of the tract used for actual travel, and even repeated trespasses on the land cannot have any such effect.

APPEAL from the Superior Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

GEORGE A. MASON, (WILLIAM W. CASE, *pro se,*) for appellants.

FREDERICK DICKINSON, Village Attorney, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The question in this case is whether Fig street, in the village of Winnetka, includes within its boundaries the south 33 feet of lot 7, except the east 58 feet thereof, in

block 10, in the county clerk's division of the southwest quarter of section 17, township 42, north, range 13, east of the third principal meridian. The question arose in a proceeding brought by the village in the superior court of Cook county for the levying of a special assessment to pay for the cost of improving Fig street from Rosewood avenue to Hibbard road and condemning the south 33 feet of lot 5 in the same block 10. The ordinance passed on June 3, 1924, provided for the improvement of the street with a 16-foot cinder pavement in the center of the street, for grading the street and clearing and leveling the parkways to the lot line or to the sidewalk or sidewalks already laid. William W. Case and Marian I. Case, who are husband and wife and the owners in joint tenancy of lot 7 in block 10, filed objections to the confirmation of the assessment on their property for various reasons, all of which were later withdrawn except the one that the land necessary for the proposed improvement has not been acquired and is not in the possession of petitioner and no proceedings to acquire such land have been taken or have proceeded to judgment. The cause was heard by the court, the objection overruled, an order confirming the assessment was entered and the objectors appealed.

It is the claim of the appellants that they are the owners of all of lot 7 except the east 58 feet of the lot and except that portion taken for streets, and their property is inclosed with a wire fence, except about seven feet off the south side thereof. Lot 5 is east of lot 7 and both front on the north side of Fig street, which first appears in the plat of the Winnetka Heights subdivision, which was recorded March 12, 1891, and includes the south half of the southwest quarter and the west half of the northwest quarter of the southwest quarter of section 17. The subdivision is bounded on the east by Oakridge avenue, which is now Rosewood avenue, and Euclid avenue is the east boundary of the west half of the northwest quarter of the section.

Fig street is 33 feet wide between Euclid avenue and Rosewood avenue and 66 feet wide west of Euclid avenue, where the dedicators own the property on both sides of Fig street. It is also 66 feet wide east of Rosewood avenue. The east and west line through the middle of the southwest quarter of the section is the south boundary of lots 5 and 7 in block 10 of the county clerk's division, and Burr avenue is the west line of lot 7. The village did not claim title to the south 33 feet of lot 7 or rely upon any deed or dedication by plat. It claims a highway by prescription by reason of the use of the land by the public for a street, by improving, grading and turnpiking it, digging ditches and maintaining parkways.

Prior to November, 1891, Fig street was 33 feet wide, extending along the south side of lots 5 and 7 but including no part of those lots. On lot 5 was a residence, known in this record as the Lyons house, which extended to within 23 feet of the street. On November 24 of that year the village passed an ordinance for the improvement of Fig street by grading, turnpiking and graveling between Railroad avenue east and Euclid avenue west of lots 5 and 7. The strip to be improved was 36 feet wide along the middle of the street. An assessment was levied and confirmed to pay the cost of the improvement. The estimated cost was $1007.25, of which $36.80 was assessed against lot 7, owned by S. M. Jones. The improvement so provided for was not made, but in 1895 the village let a contract to Herman Trapp for improving Fig street and other streets at an agreed price of $3008. Under this contract Fig street was improved by grading a 27-foot roadway, including a 10-foot bed of gravel in the center, the 27-foot strip being graded down to the edges to shallow ditches which served as curbs, and by leveling off strips 19½ feet wide on either side of the 27-foot strip as parkways, from which were removed all bushes, stumps, and trees less than five inches in diameter. The work was done in 1895 and 1896. The

part of the Lyons house which extended into the strip was not removed but the improvement was carried around the house. Shortly after the improvement was completed the owner of the Lyons house fenced in his lot to the north line of Fig street as it had previously existed,—that is, to the line dividing the north and south halves of the quarter section,—and built a shed on a part of his lot which had been included in the improvement. Fig street was only 33 feet wide where it ran along the south line of lot 5, and no part of the Lyons lot ever became a part of the street by user, dedication or otherwise. The line of travel along Fig street was entirely south of the lot line of lot 5 and lot 7, which adjoined lot 5 on the west, except that the traveled roadway occupied about a foot in width, only, of the south side of lot 7. There is evidence tending to show that after the improvement of 1895 and 1896 the village caused the weeds that grew in the parkways to be cut down and graded and leveled the roadway as necessary. Samuel M. Jones, the owner of lot 7, conveyed it on November 11, 1910, to Henry W. Tresch, and he on August 4, 1912, to Harvey I. and Lona F. Brewer, who erected a house on the part of the lot now owned by the appellants and set out shrubbery south of their house and a vegetable garden extending to within a few feet of the original south line of the lot. The Brewers lived in the house which they had built, and maintained their shrubbery and vegetable garden on the part of the lot which is now in dispute, from the time of the conveyance to them until they conveyed to the appellants. The appellants occupied the house as tenants in the summers of 1920 and 1921 and afterward purchased lot 7, except the east 58 feet thereof, receiving the conveyance on April 23, 1923. In 1922 and 1923 the Brewers built a bungalow on the east 58 feet of lot 7. They were first refused a permit because the area of their lot under the building ordinance of the village was insufficient, but the permit was afterward issued on their conveying the

south 33 feet of their lot to the village. About June, 1923, the appellants inclosed their garden and shrubbery with a fence, which extends to within seven or eight feet of the traveled roadway of Fig street. The 33-foot strip of lot 5 was condemned in this proceeding, its value being fixed at $12,000. The 33-foot strip of the east 58 feet of lot 7 was acquired by the village by the deed from the Brewers, and the 33-foot strip of the appellants is claimed by the village by user for the period between 1895 and 1912, and by dedication. The use of the strip as a road was confined to the part which was, in fact, used as a road, and this was only about a foot. The only acts which are claimed to indicate any use of any other part of the strip as a street are the occasional cutting of the weeds at the side of the traveled road on what is called the parkway.

The acts upon which the appellee relies by which to establish its claim of dedication are, first, the fact that beginning with the deed of Jones to Tresch on November 11, 1910, all the deeds conveying the property excepted from their operation "that portion thereof taken, used or occupied for streets;" second, the fact that Burr avenue extended along the west side of lot 7 and was 40 feet wide as shown by the record thereof, the village claiming it was 50 feet wide, and that Tresch in 1911, while the owner of lot 7, built a sidewalk along the east side of Burr avenue, terminating at its south end 34 feet north of the original south line of lot 7. At that time there was a dispute concerning the width of both Fig street and Burr avenue, and Tresch caused a survey to be made by Frank A. Windes, who is now the village engineer, concerning which Windes testified that it was made under his direction in 1911, showing Burr avenue as 50 feet wide and Fig street at the south line of lot 7 as 66 feet wide, with the south line of lot 7 as the center of Fig street; that the plat was made for Tresch and purported to be a plat or survey of part of lot 7 and dedication for a public street, and that Tresch said

something about considering the question of dedicating a part of lot 7 for a public street. At that time the question was up of the occupied lines of the street with reference to the building of the sidewalk, and the plat was prepared to clarify the situation, showing a proposed dedication of a part of Fig street. Windes did not know how the village handled it after he got through and did not believe it was ever recorded. As far as he knew, the question of the proposed dedication of what might be called the north half of Fig street never went beyond this plat stage.

"A dedication of private property to public uses will not be held to be established except upon satisfactory proof either of an actual dedication or of such acts or declarations as should equitably estop the owner from denying such intention. This proposition is so clearly the law it needs the citation of no authorities in its support." (*City of Chicago* v. *Johnson*, 98 Ill. 618.) There was no evidence of a dedication. There is evidence that the owner had the question of dedication under consideration, but something more is required to constitute a dedication than a consideration on the part of the owner, of the question whether he shall make one or not. It is necessary not only that he should have taken the question under consideration but that he should have formed an intention of dedicating his property, and should have done some act, beyond mere preparation, to carry the intention into effect. The survey was for the owner's information and had no element of an estoppel in it; and the same thing may be said of the construction of the sidewalk on the east side of Burr avenue.

User by the public of a strip of land as a highway for a period of fifteen years constitutes the same a public highway. (*Thorworth* v. *Scheets*, 269 Ill. 573; *Village of Middletown* v. *Glenn*, 278 id. 149.) Where the boundary of a highway acquired by user is located is a question of fact. Its width and location may often be determined by fences built by adjoining land owners. *Village of Middletown* v.

*Glenn, supra; Town of Harmony* v. *Clark,* 250 Ill. 57; *Wiehe* v. *Pein,* 281 id. 130.

The owner of lot 7 was a non-resident until 1910, when the conveyance was made to Tresch. The lot was vacant. There was no house on it and no fence or other object to mark the boundary. While an important element to consider in determining the lines of a road acquired by adverse use is the recognition of the limits by owners of adjoining land, if they have indicated any such recognition, nothing was done by the owners of lot 7 to indicate the boundary of this street. The travel of the public over vacant property without the knowledge of the owner certainly can give no right outside of the tract used for actual travel. Even repeated trespasses on the land could not have any such effect. The only evidence of any authority exercised over the land in the parkway was, in the first instance, it was cleared of rubbish, stumps and small trees and for a few years weeds were cut from an indefinite part of it.

"The user to create a road by prescription must be adverse to the owner under a claim of right, continuous, uninterrupted and with the knowledge of the owner yet without his consent. A continued and uninterrupted use of land for a highway for the statutory period, in the absence of proof to the contrary, will be presumed to have been under a claim of right. But there must be something more than mere travel over unenclosed lands." (*City of Springfield* v. *Springfield Railway Co.* 295 Ill. 234.) The location of the limits of a public road is a question of fact, to be determined upon the evidence bearing upon that question. (*Village of St. Anne* v. *Coyer,* 223 Ill. 96.) A prescriptive right so acquired must be confined to a specific or definite, certain and precise, line or way. *Township of Madison* v. *Gallagher,* 159 Ill. 105.

The evidence shows the use by public travel of the specific tract which extends a little more than a foot over the strip involved in this suit, but there is no evidence of any

use of the parkway along the south side of lot 7 that was limited by any definite boundary. No knowledge by the owner of any use of the strip was shown.

The court erred in holding that the evidence showed that the public had a prescriptive right to the use of the strip of land which is the subject of this controversy, and the judgment is therefore reversed and the cause remanded, with directions to sustain the appellants' objections.

*Reversed and remanded, with directions.*